IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CARLOS CRIOLLO | § | |
| v. | § | CIVIL ACTION NO. 6:09cv264 |
| PAULETTE MILTON, ET AL. | § | |

### MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND ENTERING FINAL JUDGMENT

The Plaintiff Carlos Criollo, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The original named defendants were Nurse Paulette Milton, Michael Unit medical practice manager Pam Pace, program manager Guy Smith, and an unknown nurse at the Estelle Unit in Huntsville, Texas. Only Criollo's claims against Nurse Milton remain active.

Criollo stated that on March 5, 2009, at the Estelle Unit, he caught his hand in a cell door which closed and then locked. After the door was opened, he was taken to the infirmary, where he was issued a pass to see a medical provider at his unit of assignment, the Michael Unit. Criollo was ordered pain medication and instructions given for changes of the dressing, but the nurse at the Estelle Unit did not do either of these while Criollo was at that unit.

On March 9, 2009, he was sent back to the Michael Unit. He showed his medical pass and was taken to the infirmary, where he saw a nurse; however, she told him that he did not need to see a provider that day and that he should submit a sick call request. She gave him some packets of aspirin, but these had expired in December of 2008, three months earlier.

1

The next day, May 10, Criollo was called to the infirmary and interviewed by Nurse Milton. He asked to see a doctor and for some pain medication, but Milton determined on her own that he did not need further treatment. She left his dressing unchanged, did not give him any pain medication, and did not record the interview in the medical records.

Criollo filed grievances, and the investigations concluded that the Estelle Unit had failed to enter the medication orders in the computer and that the Michael Unit had failed to document the medications which he had been prescribed. Criollo's medical records showed that the paper pass which Criollo received at the Estelle Unit on March 5 listed a prescription for aspirin, instructions to remove the splint in two days, a follow-up in five days, and no work for seven days; however, a computer printout dated March 9, 2009 does not show any prescribed medications. This printout is part of a form entitled "Correctional Managed Care - Medical and Mental Health Transfer Screening." This form says that Criollo is not currently taking any medications but that the printed pass is attached, and the screener noted that Criollo "needs meds from pass on 3-5-09." The medical records contain no record of an interview between Criollo and Nurse Milton on March 10, 2009.

After review of the pleadings and testimony, the district court dismissed Criollo's lawsuit as frivolous, but the Fifth Circuit reversed as to the dismissal of Nurse Milton, while affirming the dismissal of the remaining defendants. The district court had concluded that the errors made in Criollo's treatment did not rise to the level of deliberate indifference, but the Fifth Circuit determined that Criollo's allegation that he had given the pass to Nurse Milton outlining his prescribed treatment, and that Milton was in possession of the pass for some four hours before she had him removed from the infirmary, adequately showed that his claim against Milton was not frivolous.

Following the remand, the district court ordered Milton to answer the lawsuit. Milton has answered the lawsuit and has filed a motion for summary judgment, to which Criollo filed a response.

This Court reviewed the motion for summary judgment and the response, as well as the summary judgment evidence, and issued a Report on October 5, 2011, recommending that the motion for summary judgment be granted and that the lawsuit be dismissed. This Report concluded that Criollo had not shown that he suffered "substantial harm" as a result of the delay in obtaining medical care, as required by Fifth Circuit precedent. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) (stating that "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm.") In this case, Criollo's medical records show that after his interview with Milton, he waited seven days before filing a sick call request, and then was seen by a medical provider on March 23. This provider found four abrasions / avulsions to the fingers of Criollo's hand, which had healed, and concluded that the injury to Criollo's hand was healing. Some two months after Criollo's visit with Milton, his hand had healed to the point that he was able to play basketball.

The Report also concluded that any pain which Criollo suffered as a result of the denial of care by Milton, which denial had occurred only once, did not itself rise to constitutional dimensions, citing King v. Kilgore, 98 F.3d 1338, 1996 WL 556845 (5th Cir., September 9, 1996) (pain and discomfort resulting from prolongation of asthma attack did not amount to substantial harm); Lacy v. Shaw, 357 Fed.Appx. 607, 2009 WL 4885183 (5th Cir., December 16, 2009) (four-week delay in treating schizophrenic inmate's complaints of anxiety and insomnia did not state a constitutional claim; even if the lapse were the fault of the doctor, the inmate did not allege any substantial harm from the "moderate delay"); Harris v. Ashby, 45 Fed.Appx. 325, 2002WL 1899583 (5th Cir., July 8, 2002) (stating that "Harris has failed to assert that Dr. McCorkle's alleged delay in providing medical treatment for his high blood pressure caused him substantial harm, which is necessary to establish a constitutional violation.") Similarly, in Wade v. Fortner, 252 F.3d 1355, 2001 WL 422199 (5th Cir., March 26, 2001), the plaintiff went to the clinic on one occasion complaining of chest pain, but was sent away by the physician's assistant without receiving any treatment. The

district court concluded that the plaintiff had not shown any harm as a result of this denial and dismissed the lawsuit as frivolous, and this dismissal was affirmed by the Fifth Circuit.

Based on these applicable Fifth Circuit precedents, the Report concluded that Criollo had failed to show a constitutional violation in that he did not show that he had suffered substantial harm resulting from a delay in medical care occasioned by deliberate indifference to his serious medical needs. The Report also determined that Nurse Milton was entitled to claim the defense of qualified immunity from suit, and recommended that the lawsuit be dismissed.

Criollo filed objections to the Report of the Magistrate Judge on October 27, 2011. In his objections, Criollo argues that: (1) the Magistrate Judge's Report is the work of a "usurper or clerk" and is "false"; (2) the Attorney General for the State of Texas, representing the Defendant Nurse Milton; is "an illegal third-party intervenor" who is "illegally holding herself out as an attorney for Paulette Milton"; (3) the Magistrate Judge is "acting as a defendant interpleader or in-house attorney"; the Magistrate Judge committed fraud by saying that Criollo's claims against the remaining defendants had been dismissed; (4) the case was improperly referred to the Magistrate Judge, who had no authority to act therein; and (5) the Magistrate Judge should recuse herself as a result.

Criollo also asserts that: (6) none of the affidavits authenticating the TDCJ records were sworn under penalty of perjury and thus are invalid; (7) he intends to incorporate by reference his brief to the Fifth Circuit Court of Appeals; (8) the Magistrate Judge did not recommend that the lawsuit be dismissed, but only that the defendant's motion for summary judgment be granted; (9) the Magistrate Judge lacked authority to grant a motion to seal medical records because neither Milton nor the Attorney General fall under the State Secrets Doctrine; and (10) the State or its officials can be vicariously liable for the acts of its employees.

Next, Criollo argues that: (11) the Magistrate Judge falsely implied that Criollo had not served a certificate of service upon the defendant, but he could not do so because his certificate of service said that he could not serve a summons and complaint and the Attorney General has not

4

entered an appearance on behalf of the defendant; (12) the district judge did not grant any authority to the Magistrate Judge; (13) the Magistrate Judge has issued "fraudulent orders and reports"; (14) the district judge did not sign the order of dismissal or final judgment; and (15) the final judgment did not contain the words "it is *decreed*."

Finally, Criollo says that: (16) service was never properly effected by the United States Marshal; (17) the Magistrate Judge intentionally took malicious action against him to deprive him of his constitutional rights, thus giving rise to the element of scienter; (18) his claims have never been lawfully dismissed by the district court or the appellate court; (19) the Fifth Circuit's decision in the case justifies a declaratory judgment *sua sponte*; (20) no final judgment was lawfully entered in his case; and (21) the Eleventh Amendment is inapplicable to his lawsuit. None of these assertions contain any merit, nor do any of them show any basis for rejecting the Report of the Magistrate Judge.

Significantly, Criollo's objections do not address any of the proposed findings, conclusions, and recommendations contained within the Report. As a result, Criollo is barred from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except upon grounds of plain error, from appellate review of those unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. Douglass v. United Services Automobile Association, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc)*.

Criollo also attaches an "affidavit" to his objections designating another inmate, Jose Estrada, as his "durable power of attorney," asking the Court to appoint Estrada to handle his case. The Fifth Circuit has held that there is no constitutional guarantee that non-attorneys may represent other persons in litigation. Guajardo v. Luna, 432 F.2d 1324 (1970), and the Local Court Rules of the Eastern District of Texas specify that only an attorney may represent another party in cases before this Court. Rule 2(d), Local Court Rules; *see also* 28 U.S.C. §1654. This conforms with the general practice of courts within the Fifth Circuit. *See* Weber v. Garza, 570 F.2d 511 (5th Cir. 1978); Turner

5

v. American Bar Association, 407 F.Supp. 451 (N.D.Tex. 1975). As a non-attorney, Estrada cannot represent Criollo or file pleadings on his behalf, and so this request lacks merit as well.

The Court has conducted a careful *de novo* review of the pleadings and testimony in this case, including the Defendant's motion for summary judgment, the Plaintiff's response thereto, the summary judgment evidence, the Report of the Magistrate Judge, and the Plaintiff's objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 65) is hereby ADOPTED as the opinion of the District Court. It is further

ORDERED that the Defendant's motion for summary judgment (docket no. 55) is GRANTED and that the above-styled civil action be and hereby is DISMISSED with prejudice. It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

**It is SO ORDERED.**

**SIGNED this 2nd day of December, 2011.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE